Dennis A Cameron, Esq.
Law Office of Dennis A Cameron
State Bar No. 3306
204 Marsh Ave, Suite 200
Reno, Nevada 89509
(775) 329-5329
dennis@dacameronlaw.com

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

## ***

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:18-CR-00057-MMD-WGC |
| | ) |
| v. | ) |
| | ) **STIPULATION AND ORDER** |
| | ) **TO REPLACE DOCUMENT 599** |
| JUAN BACA, | ) **WITH A CORRECTED DOCUMENT** |
| Defendant. | ) |

**IT IS HEREBY STIPULATED AND AGREED** by and through Defendant, JUAN BACA, his attorney, Dennis A. Cameron, Esq., and Assistant United States Attorney, Andolyn Johnson, AUSA, Counsel for the UNITED STATES OF AMERICA, that the attached Plea Agreement will replace document 599.

Document 599 was filed due to clerical error and is not a correct representation of the Plea Agreement that the defendant JUAN BACA was canvassed on. The correct Plea Agreement which Mr. BACA was canvassed on is attached as Exhibit 1.

1

The parties respectfully request the Court replace document 599 with the corrected document.

DATED this 7th day of January, 2020.

/s/   Andolyn Johnson
ANDOLYN JOHNSON, AUSA
400 S. Virginia St, Suite 900
Reno, NV   89501
Attorney for AUSA

/s/ DENNIS A. CAMERON
DENNIS A. CAMERON, Esq.
204 Marsh Ave., Ste. 200
Reno, NV 89509
Attorney for Juan Baca

## ORDER

The Court being fully informed in the premises and having reviewed the Stipulation to replace Document 599 with a corrected document to reflect the Plea Agreement on which the defendant was canvassed finds that Document 599 shall be replaced with the corrected image.


**IT IS SO ORDERED** this day 7th___ of January, 2020.



_____
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I certify that I on the date below, I electronically filed the foregoing document with the Clerk of the Court by using the ECF system which will send a notice of electronic filing to the following:

Andolyn Johnson

DATED this 7th day of January, 2020

Dennis A. Cameron

EXHIBIT ONE

EXHIBIT ONE

NICHOLAS A. TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
ANDOLYN JOHNSON
Assistant United States Attorney
Nevada Bar No. 14723
400 South Virginia, Suite 900
Reno, Nevada 89501
Phone: (775) 784-5438
Email: Andolyn.johnson@usdoj.gov

*Representing the United States of America*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

United States of America,

        Plaintiff,

    v.

Juan Baca,
  a/k/a Sneaky,

        Defendant.

3:18-CR-00057-MMD-WGC

**Plea Agreement for Defendant
Juan Baca Pursuant to Fed. R. Crim.
P. 11(c)(1)(A) and (B)**

      This plea agreement between Juan Baca, a/k/a Sneaky, ("defendant") and the United States Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement regarding the criminal charges referenced herein and the applicable sentences, fines, and forfeiture in the above-captioned case. This agreement binds only defendant and the USAO and does not bind the district court, the U.S. Probation Office, or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not prohibit the USAO or any agency or third

1

party from seeking any other civil or administrative remedies, including civil forfeiture *in rem*, directly or indirectly against defendant or defendant's property.

Defendant understands and agrees that this agreement is part of a "group plea deal" in which the disposition of the case against defendant is tied to and conditioned on the disposition of cases against four other defendants, namely, Roberto Mora-Mora, Sandy Diaz Tavares, Shawn Curl, and Richard Rossall. Accordingly, defendant and the USAO agree that this agreement and the obligations it creates will not become binding on the USAO and defendant unless and until October 9, 2019: (a) defendant executes this agreement and enters a guilty plea in accordance with this agreement; and (b) Roberto Mora-Mora, Sandy Diaz Tavares, Shawn Curl, and Richard Rossall execute their plea agreements with the USAO and enter guilty pleas in accordance with those agreements. Defendant acknowledges that defendant has discussed with defendant's attorney, and carefully considered, the possible advantages and disadvantages to defendant of entering into this agreement as part of the group plea deal; defendant is entering into this agreement as part of the group plea deal freely and voluntarily because defendant believes this agreement and the group plea deal to be in defendant's best interests; and defendant is not entering into this agreement as part of the group plea deal because of threats, coercion, or other undue influence by the USAO or by the other defendants who are part of the group plea deal, their counsel, or anyone acting on their behalf.

## I. DEFENDANT'S OBLIGATIONS

1.     Defendant agrees to:

    a.     Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a

2

one-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges the defendant with Conspiracy to Possess with Intent to Distribute Heroin and Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

   b.   Stipulate to the facts agreed to in this agreement;

   c.   Abide by all agreements regarding sentencing contained in this agreement;

   d.   Not seek to withdraw defendant's guilty pleas once it is entered;

   e.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter;

   f.   Not commit any federal, state, or local crime;

   g.   Be truthful at all times with the U.S. Probation and Pretrial Services Offices and the Court;

   h.   Before and after sentencing, upon request by the Court, the USAO, or the Probation Office, provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning defendant's assets and defendant's ability to pay. As part of the required disclosure, defendant agrees to provide any and all financial information and authorizations requested by the Probation Office for preparation of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to the USAO within three (3) weeks from entry of the plea. Defendant agrees

3

1    that the district court may enter any order necessary to effectuate or facilitate disclosure of

2    defendant's financial information.

3            i.    To facilitate payment of any fine, forfeiture, restitution, or assessment,

4    surrender assets defendant obtained directly or indirectly as a result of defendant's crimes.

5    Defendant agrees to voluntarily release funds and property under defendant's control or in

6    which defendant has any property interest, before and after sentencing, to pay any fine or

7    restitution identified in this agreement, agreed to by the parties, or ordered by the Court.

8            j.    The forfeiture of the property and the imposition of the forfeiture of the

9    property as set forth in this Plea Agreement and the Forfeiture Allegation of the Superseding

10   Information.

## II. THE USAO'S OBLIGATIONS

12   2.    The USAO agrees to:

13           a.    Stipulate to facts agreed to in this agreement;

14           b.    Abide by all agreements regarding sentencing contained in this

15   agreement;

16           c.    At sentencing, provided that defendant demonstrates an acceptance of

17   responsibility for the offense up to and including the time of sentencing, recommend a two-

18   level reduction in the applicable sentencing guidelines offense level, pursuant to USSG §

19   3E1.1, and move for an additional one-level reduction if available under that section;

20           d.    Not bring any additional charges against defendant arising out of the

21   factual basis set forth in this agreement. However, the USAO reserves the right to prosecute

22   defendant for (a) any crime of violence as defined by 18 U.S.C. § 16; (b) any criminal tax

23   violations (including conspiracy to commit such violations chargeable under 18 U.S.C. §

24                                        4

371). Defendant agrees that the district court at sentencing may consider any uncharged conduct in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## III. ELEMENTS OF THE OFFENSE

3. <u>Count One</u>: The elements of Conspiracy to Possess with Intent to Distribute Heroin and Methamphetamine, under 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846, are as follows:

<u>First</u>: Beginning at a unknown date, but no later than January 25, 2018, and continuing to on or about June 14, 2018, there was an agreement between two or more persons to possess with intent to distribute a controlled substance, to wit: heroin, a schedule I controlled substance, and methamphetamine, a schedule II controlled substance; and

<u>Second</u>: Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose. "To distribute" means to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in that transaction.

*See* Ninth Circuit Model Criminal Jury Instruction 9.19 (approved 4/2019).

## IV. CONSEQUENCES OF CONVICTION

4. <u>Maximum Statutory Penalties</u>:

a. Defendant understands that the statutory maximum sentence the district court can impose for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 as charged in Count 1, is 20 years' imprisonment; up to a period of lifetime supervised release;

a fine of $1,000,000; and a mandatory special assessment of $100. There is a mandatory minimum 3 year period of supervised release that must be imposed for a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846 as charged in Count 1.

b.   Criminal Forfeiture: Defendant understands that the district court will impose forfeiture of the property.

5.   Parole Abolished: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

6.   Supervised Release: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

7.   Factors under 18 U.S.C. § 3553: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's sentence. However, the statutory maximum sentence limit the district court's discretion in determining defendant's sentence.

8.   Potential Collateral Consequences of Conviction: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or

6

ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9. <u>Potential Removal/Deportation Consequences of Conviction</u>: Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

## V. FACTUAL BASIS

10. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to go to trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable doubt and establish its right to forfeit the specified property by preponderance of the evidence. Defendant further acknowledges that defendant's admissions and declarations of fact set forth below satisfy every element of the charged offense. Defendant waives any potential future claim that the facts defendant admitted below are insufficient to satisfy the elements of the charged offense. Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

7

11.     Investigators intercepted communications over Target Telephone 1 ("TT-1"), a cell phone believed to be used by codefendant Jose Valentin MORA ("MORA") assigned call number (775) 527-6931, which thereafter was assigned call number (775) 221-2180, pursuant to orders dated April 2, 2018 and April 30, 2018, by Hon. Howard D. McKibben, United States District Judge for the District of Nevada, in CCA-N-2018-002-HDM (under seal), and over Target Telephone 2 ("TT-2"), a second cell phone believed to be used by MORA assigned call number (775) 379-4034, and thereafter assigned call number (775) 221-2176, pursuant to order dated April 30, 2018, in CCA-N-2018-003-HDM (under seal).

Heroin Transaction: Juan BACA and Jose MORA on May 5, 2018

12.     On May 5, 2018, beginning at approximately 1:06 p.m., communications were intercepted between defendant Juan BACA ("BACA"), using (775) 409-2218, and codefendant MORA, using TT-1. In those communications, BACA informed MORA that he (BACA) sold the half last night and had some money for MORA. Previously, on April 28, 2018, BACA had purchased two quarter ounces of "brown," which is a reference to heroin, from MORA. MORA responded to BACA, saying to let him know when BACA was ready. BACA replied he would ask "the guy," a reference to a heroin buyer, if he still wanted the stuff. At 6:37 p.m., BACA told MORA he wanted "one," a reference to an ounce of heroin. MORA said he'd have to see if he had enough and if not stop and get some. MORA and BACA arranged to meet at a business located at 195 Kietzke Lane, Reno, Nevada, at about 7:00 p.m. At 7:18 p.m., BACA informed MORA that he (BACA) was there. MORA answered he would be there in three minutes. At 7:21 p.m., MORA met with BACA in the parking lot of that business at 195 Kietzke Lane in Reno, Nevada. BACA arrived in a black Volvo, bearing Nevada license plate 85E061. BACA was briefly inside

8

MORA's gold Dodge Nitro where he obtained an ounce of heroin from MORA. BACA then left the parking lot in the Volvo to 290 High Street, Reno, Nevada, which is BACA's residence. At 7:52 p.m., BACA called MORA and said "it was just 23 and a half" [and there are 28 grams in an ounce]. MORA replied to look in the car, as it may have dropped. BACA said he would check, but only after he "drops it off," a reference to the heroin.

Conspiracy Relating to Methamphetamine involving<br>Juan BACA and Jose MORA on May 7, 2018

13.     On May 7, 2018, beginning at approximately 3:52 p.m., communications were intercepted between defendant BACA, using (775) 409-2218, and codefendant MORA, using TT-1. BACA sent a text message to MORA saying, "I need one." At 3:53 p.m., BACA sent a text message to MORA again saying, "Need 1z in about 45 min." MORA replied, "Call me when u ready." At 4:20 p.m., BACA asked MORA if he still had the "blue," a reference to blue-colored methamphetamine. MORA replied that he did. At 4:29 p.m., BACA called MORA. While on the phone, BACA and MORA made visual contact with each other and met up at the 195 Kietzke Lane, Reno, Nevada. BACA went to meet MORA for the purpose of obtaining methamphetamine.

14.     At 6:48 p.m., BACA again called MORA and said he needed another "blue one," again a reference to blue-colored methamphetamine. MORA said he needed to go to his house first to get it. BACA said he was at [the name of business at 195 Kietzke Lane in Reno, Nevada]. MORA said it would be about 20-30 minutes. At 7:13 p.m., MORA asked if BACA was still at [the name of that business] and that he (MORA) was on his way. This time, but not earlier in the day, MORA provided methamphetamine to BACA.

9

15.     Defendant admits that he became a member of this conspiracy to distribute heroin and methamphetamine with codefendant MORA on May 5, 2018, but not before that date. He does not dispute that the amount of methamphetamine that was foreseeable to him in this conspiracy was at least 1.5 kilograms but less than 5 kilograms of a mixture and substance containing a detectable amount of methamphetamine. To that end, on May 28, 2018, a supply of methamphetamine destined for codefendant MORA was intercepted in the District of Nevada containing 2132 grams (+ or – 80 grams) of pure methamphetamine in a truck owned by codefendant MORA and occupied by codefendants Marcos Hernandez-Cisneros and Ciarra Hernandez. While the amount of methamphetamine seized while BACA was a coconspirator was foreseeable, BACA sold methamphetamine and heroin he obtained from codefendant MORA as set forth above and was not familiar with the purity of those controlled substances.

All in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846.

All in the District of Nevada.

## VI. SENTENCING FACTORS

16.     <u>Discretionary Nature of Sentencing Guidelines</u>: Defendant understands that in determining defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a)

factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17.     <u>Offense Level Calculations</u>: The parties jointly agree and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court should use the following base offense level and adjustments; acknowledge that these stipulations do not bind the district court and agree that they will not seek to apply or advocate for the use of any other base offense level or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range, except as expressly noted in the following paragraphs:

| | |
|---|---|
| Base Offense Level [USSG § 2D1.1(c)(5) – BACA joined the above-described conspiracy on or after May 5, 2018, and it was reasonably foreseeable by BACA that the amount of controlled substances distributed in furtherance of the conspiracy while he was a member of the conspiracy was more than 1.5kg and less than 5kg of methamphetamine]: | 32 |
| Mitigating Role [USSG § 3B1.2]: | -3 |
| If Court finds defendant qualifies for reduction under Mitigating Role, USSG § 3B1.2, corresponding reduction in base offense level [USSG § 2D1.1(a)(5)]: | -2 |
| <u>Acceptance of Responsibility:</u> | <u>-3</u> |
| Adjusted Offense Level: | 24 |
| 18 U.S.C. § 3553 variance for group plea | - 2 |

18.     No Agreement with respect to Safety Valve: Defendant and the USAO have made no agreement whether defendant qualifies for safety-valve relief under USSG §§ 5C1.2(a)(1)-(5) to receive a two level reduction in his offense level under USSG § 2D1.1(b)(18).

19.     Parties Recommend -3 But No More than -3 for Mitigating Role
        Under USSG § 3B1.2, No Reduction under USSG § 2D1.1(b)(17)

The parties agree to recommend a -3 reduction, but no more than -3 reduction, in his offense level under Mitigating Role, USSG § 3B1.2. The parties further agree that no reduction in defendant's offense level is appropriate under USSG § 2D1.1(b)(17) and, accordingly, the parties will not argue for any reduction under USSG § 2D1.1(b)(17).

20.     <u>Reduction for Acceptance of Responsibility</u>: Under USSG § 3E1.1(a), the USAO will recommend that defendant receive a two-level downward adjustment for acceptance of responsibility unless the defendant (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides false or misleading information to the USAO, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

21.     Under USSG § 3E1.1(b), if the district court determines that defendant's total offense level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two- level downward adjustment pursuant to the preceding paragraph, the USAO will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because defendant communicated defendant's decision to plead guilty in a timely

manner that enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

22. <u>Criminal History Category</u>. Defendant acknowledges that the district court may base defendant's sentence in part on defendant's criminal record or criminal history. The district court will determine defendant's criminal history category under the sentencing guidelines.

23. <u>Additional Sentencing Information</u>. The stipulated sentencing guidelines calculations are based on information now known to the parties. Defendant understands that both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's sentencing guidelines calculations and determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty plea.

Defendant acknowledges that the U.S. Probation Office may calculate the sentencing guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other

additional information as it calculates the sentencing guidelines range and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw the defendant's guilty plea.

## VII. POSITIONS REGARDING SENTENCING

24.     The USAO will recommend that the district court sentence defendant at the low end of the advisory guideline range as determined by the district court. Defendant may argue for a downward variance pursuant to 18 U.S.C. § 3553(a). Defendant acknowledges that the district court does not have to follow the recommendation of either party.

25.     If defendant commits any act that results in the Court finding that defendant is not entitled to a downward adjustment for acceptance of responsibility, the USAO is entitled to argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a). In any such event, defendant remains bound by the provisions of this agreement and shall not have the right to withdraw defendant's guilty plea.

## VIII. WAIVER OF CONSTITUTIONAL RIGHTS

26.     Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.     The right to persist in a plea of not guilty;

        b.     The right to a speedy and public trial by jury;

        c.     The right to be represented by counsel—and if necessary have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and if necessary have the court appoint counsel—at every other stage of the proceeding;

14

d.   The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

e.   The right to confront and cross-examine witnesses against defendant;

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

h.   The right to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other pretrial motions that have been filed or could be filed.

## IX. WAIVER OF APPELLATE RIGHTS

27.   <u>Waiver of Appellate Rights.</u> Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the right to appeal the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction, including but not limited to the constitutionality of the statute of conviction; any other aspect of the sentence; and any order of restitution or forfeiture.

28.   Defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the applicable Sentencing Guideline range as determined by the district court.

29.   <u>Waiver of Post-Conviction Rights</u>. Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's

15

conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

30. <u>Preservation of Evidence</u>: Defendant acknowledges that the USAO and the agencies investigating this case are not obligated or required to preserve any evidence obtained in the investigation of this case.

## X. FORFEITURE

31. The defendant knowingly and voluntarily:

a. Agrees to the district court imposing the civil judicial forfeiture or the criminal forfeiture of:

1. $1,000.00 in US Currency seized from Alberto Acosta-Macias at 3503 Postre Ct.;

2. $213.00 in US Currency seized from Jose Mora at 460 E. Grove St.;

3. $607.00 in US Currency seized from Shawn Curl at 4986 S. Virginia St.;

4. $996.00 in US Currency seized from Shawn Curl at 18119 Cherry Leaf Ct.;

5. $2,750.00 in US Currency seized from Shawn Curl at 18119 Cherry Leaf Ct.;

6. $16,021.00 in US Currency seized from Shawn Curl at 18119 Cherry Leaf Ct.; and

7. $3,785.00 in US Currency seized from Shawn Curl at 18119 Cherry Leaf Ct.

(all of which constitutes property);

b. Agrees to the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property;

c. Abandons or forfeits the property to the United States;

d. Relinquishes all possessory rights, ownership rights, and all rights, titles, and interests in the property;

16

1        e.     Waives defendant's right to any abandonment proceedings, any civil

2  administrative forfeiture proceedings, any civil judicial forfeiture proceedings, or any

3  criminal forfeiture proceedings of the property (proceedings);

4       f.     Waives service of process of any and all documents filed in this action

5  or any proceedings concerning the property arising from the facts and circumstances of this

6  case;

7       g.     Waives any further notice to defendant, defendant's agents, or

8  defendant's attorney regarding the abandonment or the forfeiture and disposition of the

9  property;

10      h.     Agrees not to file any claim, answer, petition, or other documents in

11  any proceedings concerning the property; agrees not to contest, or to assist any other person

12  or entity in contesting, the forfeiture; and agrees to withdraw immediately any claim,

13  answer, petition, or other documents in any proceedings;

14      i.     Waives the statute of limitations, the CAFRA requirements, Fed. R.

15  Crim. P. 7, 11, 32.2, and 43(a), including, but not limited to, forfeiture notice in the

16  charging document, the court advising defendant of the forfeiture at the change of plea, the

17  court having a forfeiture hearing, the court making factual findings regarding the forfeiture,

18  the court failing to announce the forfeiture at sentencing, and all constitutional

19  requirements, including but not limited to, the constitutional due process requirements of

20  any proceedings concerning the property;

21      j.     Waives defendant's right to a jury trial on the forfeiture of the

22  property;

23

24

k.    Waives all constitutional, legal, and equitable defenses to the forfeiture or abandonment of the property in any proceedings, including, but not limited to, (1) constitutional or statutory double jeopardy defenses and (2) defenses under the Excessive Fines or Cruel and Unusual Punishments Clauses of the Eighth Amendment to the United States Constitution;

l.    Agrees to the entry of an Order of Forfeiture of the property to the United States;

m.    Waives the right to appeal any Order of Forfeiture;

n.    Agrees the property is forfeited to the United States;

o.    Agrees and understands the abandonment, the civil administrative forfeiture, the civil judicial forfeiture, or the criminal forfeiture of the property shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the abandonment or the forfeiture;

p.    Agrees and understands the USAO may amend the forfeiture order at any time to add subsequently located property or substitute property pursuant to Fed. R. Crim. P. 32.2(b)(2)(C) and 32.2(e);

q.    Acknowledges that the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution; and

r.    Agrees to take all steps as requested by the USAO to pass clear title of the property to the United States and to testify truthfully in any judicial forfeiture proceedings. Defendant understands and agrees that the property represents proceeds and/or facilitating property of illegal conduct and is forfeitable. Defendant shall provide the

18

USAO with a full and complete financial disclosure statement under penalty of perjury within 10 days of executing the plea agreement. The financial statement shall disclose to the USAO all of assets and financial interests valued at more than $1,000. Defendant understands these assets and financial interests include all assets and financial interests that defendant has an interest, direct or indirect, whether held in defendant's name or in the name of another, in any property, real or personal. Defendant shall also identify all assets valued at more than $1,000 which defendant has transferred to third parties or diverted from defendant directly to third parties, since April 2, 2018, including the location of the assets and the identity of any third party.

        s.      The defendant admits the property is (1) any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 21 U.S.C. § 841(a)(1), a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), or 21 U.S.C. § 846, conspiracy to commit such offense; (2) any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of violations of 21 U.S.C. §§ 841(a)(1) and 846; (3) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of violations of 21 U.S.C. §§ 841(a)(1) and 846; and (4) all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841(a)(1) and 846, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of 21 U.S.C. §§ 841(a)(1) and 846, and is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 21 U.S.C. § 853(a)(1); 21 U.S.C. § 853(a)(2); and 21 U.S.C. § 881(a)(6) with 28 U.S.C. § 2461(c).

19

## XI. RESULT OF WITHDRAWAL OF GUILTY PLEA
## OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

32.     <u>Consequence of withdrawal of guilty plea:</u> Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

33.     <u>Consequence of vacatur, reversal, or set-aside:</u> Defendant agrees that if defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement, except that, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

# XII. BREACH OF AGREEMENT

34.     Defendant agrees that if, at any time after this agreement becomes effective, defendant knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the district court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will remain bound by the provisions of this agreement and will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

35.     Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.     Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.     Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.     Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the

agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XIII. COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE ARE NOT PARTIES.

36.     Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

37.     Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

38.     Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIV. ADDITIONAL ACKNOWLEDGMENTS

39.     The Defendant acknowledges that:

a. Defendant read this agreement and defendant understands its terms and conditions.

b. Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c. Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d. Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e. Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f. The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

g. Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

40. Defendant understands that defendant alone decides whether to plead guilty or go to trial, and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

41. Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

42. Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

43. Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charges and chooses to take advantage of the promises set forth in this agreement and for no other reason.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# XV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

44.    The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

NICHOLAS A. TRUTANICH
United States Attorney

_____        1-7-20
ANDOLYN JOHNSON                          Date
Assistant United States Attorney


_____        1-5-20
JUAN BACA a/k/a Sneaky                   Date
Defendant


_____        1-5-20
DENNIS CAMERON, ESQ.                     Date
Attorney for JUAN BACA a/k/a Sneaky